[No. B006338. Second Dist., Div. Two. Dec. 18, 1984.]

Estate of ROSE M. JOHNSON, Deceased.
KENNETH MARGOLIS-JOHNSON, as Special Administrator, etc.,
Petitioner and Respondent, v.
OHIO CASUALTY INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Montgomery, Gascou, Gemmill & Thornton, Rene J. Gascou, Jr., and Mark F. Marnell for Defendant and Appellant.

Douglas E. Carey as Amicus Curiae on behalf of Defendant and Appellant.

Reinis & Fink and Mitchell N. Reinis for Petitioner and Respondent.

OPINION

**ROTH, P. J.**—Rose M. Johnson (the decedent) died intestate on March 11, 1980. She was survived by her daughter, Deborah L. Braunworth (Debo-

rah), and by respondent Kenneth Margolis-Johnson (Kenneth), the son of her predeceased spouse. Letters of administration were issued to Deborah in May of 1980, and she thereafter filed an inventory of the decedent's assets showing cash in the amount of $27,405.31, other personal property valued at $2,500, and real estate appraised at $45,000. Consistent with the inventory, Deborah as administratrix also posted two bonds in the respective amounts of $16,000 and $12,000, both of which were issued by appellant, the Ohio Casualty Insurance Company (Ohio) as surety.

In April of 1981, Deborah filed her petition for distribution to sole distributee without rendering an account, which was placed off calendar owing to the existence of an unaccounted for creditor's claim in the sum of $974.71. Subsequently, without this petition having been acted upon, Deborah disappeared, and her whereabouts remain unknown.

As a result of Deborah's disappearance, and in July and September of 1982, Kenneth sought and obtained first the suspension and then the revocation of her letters of administration and his own appointment as special administrator of the decedent's estate. In that capacity he became aware that the cash and most of the other personal property assets of the decedent's estate, as hereinabove described, were missing.[1] Accordingly, he made demand upon Ohio to restore the value of those assets under their surety bonds, and petitioned in his first and final account to surcharge Deborah for the same.

An order dated December 12, 1983, settling that account, and from which this appeal is taken, imposed the surcharge requested and required Ohio to "forthwith make payment of $28,000 to [Kenneth as special administrator] under its bonds."[2] The order likewise provided that the balance of the estate's assets after deduction of expenses, fees and commissions be deposited with the Los Angeles County Treasurer pursuant to Probate Code section 1060.[3]

---

[1] The orders of suspension and revocation each contained a finding that Deborah had "absconded and concealed herself and assets of the estate." In later proceedings, the trial court declined to make the same finding, then being of the view that proof related to the issue established only that Deborah's whereabouts were unknown and that the assets referred to were missing.

[2] Ohio's liability, of course, was limited to the amount specified in its bonds, viz., $28,000. Deborah, on the other hand, was surcharged "in the sum of $29,755.31 plus interest at the rate of seven percent (7%) from July 25, 1980 . . . ."

[3] "When property is assigned or distributed . . . to a distributee who cannot be found . . . and the same or any part thereof consists of money, the executor or administrator may deposit the money, in the name of the assignee or distributee, with the county treasurer of the county in which the proceedings are pending . . . ." (Cf. Prob. Code, § 1027.)

■■■ Ohio, of course, under various theories, maintains on the appeal, in essence, that it should not be obliged to make the ordered payment, or that, if it is, it should simultaneously be held entitled to recover the same.

For the reasons hereinafter set out, we are satisfied Ohio's contention is well founded, and that, to that extent, the trial court's order of December 12, 1983, must be reversed.

It is not disputed by Kenneth that Deborah, being the decedent's only surviving issue, in the ordinary course of events would have been the sole beneficiary of the decedent's estate.[4] (See Prob. Code, § 222.) It is also clear, stated summarily, that, upon her disappearance, Kenneth, as issue of the decedent's predeceased spouse, would have been entitled to distribution of the assets of the decedent's estate, agreeably with the provisions of Probate Code section 229, subdivisions (a) and (d), as those provisions interact with Probate Code sections 231, 1060 and 1064.[5] (See *Mundt* v. *State of*

---

[4] In his first and final account Kenneth alleged that "Were [Deborah] available, she would be the heir to this estate."

[5] The statutes, excepting Probate Code section 1060 (see fn. 3), in pertinent part provide respectively:

"(a) If the decedent leaves no living spouse or issue and there are issue of the decedent's predeceased spouse, the portion of the decedent's estate attributable to the decedent's predeceased spouse shall go in equal shares to the children of the predeceased spouse and to their descendants by right of representation . . . ."

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(d) That portion of the decedent's estate not otherwise subject to this section shall be distributed pursuant to the provisions of this article, except that if a portion of the decedent's estate would otherwise escheat to the state because there is no relative, including next of kin, such portion of the estate shall be distributed as provided by subdivision (a) along with any portion of the decedent's estate attributable to the decedent's predeceased spouse." (Prob. Code, § 229, subds. (a), (d).)

"(a) If a decedent, whether or not he was domiciled in this state, leaves no one to take his estate or any portion thereof by testate succession, and no one other than a government or governmental subdivision or agency to take his estate or a portion thereof by intestate succession, under the laws of this state or of any other jurisdiction, the same escheats at the time of his death in accordance with this article." (Prob. Code, § 231, subd. (a).)

"(a) When any person appears and claims the money or other personal property on deposit in the county treasury he shall file a petition in the superior court which made the distribution, showing his claim or right to the property, or the proceeds or any portion thereof.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The petition shall be verified and, among other things, shall state the facts required to be stated in a petition filed under Section 1355 of the Code of Civil Procedure, and upon the filing of the petition, the same proceedings shall be had as are required by that section.

"If, upon trial of the issues, the court is satisfied of the claimant's right to the property claimed, it shall grant him a certificate to that effect under its seal. Upon presentation of the certificate, the county auditor must draw his warrant on the county treasurer for the amount of money covered by the certificate. . . ."

"(b) Claimants of money or other personal property deposited in the county treasury . . . may, in lieu of filing the petition provided for in subdivision (a) of this section, present such claim in form of an affidavit to a judge of the superior court which made the assignment or distribution, and such judge may thereupon, in his discretion, dispense with the filing of a petition and grant claimants or distributees the certificates provided for in subdivision (a)." (Prob. Code, § 1064.)

*California* (1976) 54 Cal.App.3d 940, 944, fn. 2 [127 Cal.Rptr. 20]; cf. *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678 [91 Cal.Rptr. 585, 478 P.2d 17].)

Based upon the fact that he becomes a beneficiary in this fashion, Kenneth argues it is incumbent upon Deborah to make him whole, just as any personal representative is obliged to do in the face of loss caused by the fiduciary's negligence or malfeasance. Put another way, he urges that the fact Deborah initially was both administrator and beneficiary of the decedent's estate, and to that degree was dealing entirely with her own property, is of no consequence once he has been substituted as beneficiary in her stead. We disagree. The only reasons in a modern world for property formerly belonging to a decedent to escheat to the state is that there is no other beneficiary known who has a superior claim thereto, or that in the orderly in rem administration of estates, when the whereabouts of such a beneficiary is not ascertainable, it is inexpedient indefinitely to maintain assets pending the beneficiary's discovery. ■ Similarly, the only reason one like Kenneth is accorded the status of substitute beneficiary is that passage of property to the state by escheat is not favored by the law and is "to be avoided wherever possible." (*Mannheim* v. *Superior Court, supra,* 3 Cal.3d 678, 691.) ■ To suggest that in the light of these fundamental considerations it should be the rule that one who otherwise would be a sole beneficiary and who is also the estate's personal representative must be held liable to a substitute beneficiary or to the state for the value of assets he or she would have been entitled to but for his or her disappearance prior to formal distribution seems to us anomalous, at odds with common sense, and in derogation of what was intended to be accomplished by the pertinent legislation.

That being so, we are of the opinion and hold accordingly that no surcharge is appropriate in such circumstances, regardless of the manner in which estate assets have been depleted (see fn. 1), and that there thus being no liability of the fiduciary as principal, neither on the same facts is a surety liable by virtue of its undertakings. (See Civ. Code, § 2787.)

Additionally, what seems equally apparent is that even were Ohio required to make payment upon its bonds, it would immediately be subrogated "not only to the rights and remedies of the creditor against the principal connected with the debt, but . . . also . . . to the similar rights and remedies of the principal against the creditor." That is to say, were Ohio required to make such payment, it would stand in the shoes not only of Deborah as administratrix, but also of Deborah as the person first entitled to distribution of the decedent's estate, with the result that, whether or not distribution were to be made pursuant to Probate Code section 1060 (see fn. 3), Ohio, as Deborah's subrogee or equitable assignee, would itself be entitled to such

distribution, at least to the extent of its interest, i.e., the amount it paid on its bonds. (See *Snider* v. *Basinger* (1976) 61 Cal.App.3d 819, 824-825 [132 Cal.Rptr. 637].)[6]

The order appealed from, insofar as it surcharges Deborah L. Braunworth as administratrix and requires payment of $28,000 by the Ohio Casualty Insurance Company on its surety bonds, is reversed. In all other respects, said order is affirmed.[7] Costs on appeal to appellant.

Compton, J., and Gates, J., concurred.

A petition for a rehearing was denied January 9, 1985, and respondent's petition for a hearing by the Supreme Court was denied February 27, 1985.

---

[6]While Kenneth also does not dispute that this is the case, he insists the principles discussed are without application here because Ohio has not yet actually made payment on its bonds. Consistent, however, with the fact that the order appealed from mandates that it do so, and because the law will not enjoin the doing of a useless act, the argument under the circumstances present is without substance. The same argument, with the same answer, are involved in Kenneth's further assertion Ohio is without standing on the appeal.

[7]Besides the relief requested by Ohio on its appeal, we are asked by Kenneth to order immediate distribution to him of the estate's assets held by the county treasurer, agreeably with the reasoning in *Mannheim* v. *Superior Court, supra,* 3 Cal.3d 678, 692-693. We decline to do so not only because Kenneth did not appeal or cross-appeal herein but because such assets were so deposited at his instance.

There is also before us what is designated a respondent's brief filed by Robert and Earlene Mund, as judgment creditors of Deborah for some $7,268 wherein it is asserted they are entitled to distribution in satisfaction of their judgment. It being clear these "respondents" are instead would-be appellants who perfected no appeal, we similarly decline to address their claim. (Cf. *Estate of McDill* (1975) 14 Cal.3d 831, 840 [122 Cal.Rptr. 754, 537 P.2d 874].)